IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DENNIS CRESPIN AND
SHERRY CRESPIN,

          Plaintiffs,

vs.    Cause No. Cv-10-0881

STATE FARM MUTUAL AUTOMOBILE    **JURY TRIAL REQUESTED**
INSURANCE COMPANY,

          Defendant.

COMPLAINT FOR BREACH OF CONTRACT, BAD FAITH, VIOLATIONS
OF THE NEW MEXICO INSURANCE PRACTICES ACT, VIOLATION OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND
PUNITIVE DAMAGES

COME NOW Plaintiffs, by and through their counsel of record, and offer the following as their Complaint against the Defendant herein.

1. Plaintiffs are residents of Bernalillo County, New Mexico.

2. On information and belief, Defendant State Farm Mutual Automobile Insurance Company has its principal place of business within the State of Indiana where it is incorporated.

3. The amount in controversy in this case, separate from attorney's fees and punitive damages, exceeds $ 75,000.00.

4. For many years the Plaintiffs have owned automobile insurance policies issued by the Defendant. These policies include uninsured/underinsured ("UIM") coverages of $100,000.00 per person and $300,000.00 per incident.

5. These insurance policies were in effect on August 14, 2008.

6. On August 14, 2008, one of the vehicles owned by the Plaintiffs was struck from

the rear by another vehicle.   The vehicle was struck with such force that it was pushed into a third vehicle that was in front of Plaintiffs' truck.   Plaintiff Dennis Crespin, who was driving the Plaintiffs' vehicle, was thrown back and forth with such force that his body smashed the rear window of the truck.

7. As a result of this incident, Plaintiff Dennis Crespin suffered severe injuries including damage to his rotator cuff which ultimately required surgical repair.

8. Plaintiff Sherry Crespin reported the accident to her State Farm local agent within days of the accident.

9. The medical bills and medically related expenses incurred by Plaintiff Dennis Crespin to treat his injuries totaled approximately $ 30,000.00.   Additionally, Plaintiff Dennis Crespin incurred approximately $ 15,000.00 in lost wages as a result of his injuries.

10. Plaintiffs filed a claim against the driver of the vehicle which struck Plaintiff Dennis Crespin from behind, through that driver's insurance company, Farmer's Insurance.

11. In March, 2010, Plaintiffs resolved their claim against Farmers Insurance for Farmers' policy limits of $ 25,000.00.

12. On March 22, 2010, Plaintiffs provided proof of the Farmers' settlement for policy limits, along with the accident report and complete set of the medical records and bills related to the accident, to the Defendant.   Plaintiffs also provided the Defendant with complete documentation establishing Plaintiff Dennis Crespin's lost wages.   At this point, Plaintiffs requested that Defendant contact them through their counsel to discuss resolution of their UIM claim.

13. On March 30, 2010, Defendant issued a reservations of rights including a threat

that it might deny coverage "in its entirety" because the Plaintiffs had settled for policy limits with Farmers without the Defendant's involvement and written consent and because of alleged delay in reporting the incident.  Subsequently counsel for Plaintiffs contacted Defendant and advised them that the Defendant could not legitimately claim any prejudice either as a result of the Farmers' settlement for policy limits or the supposed delay in reporting the accident.  This is because Farmers' insured was essentially judgment proof and that Plaintiff Sherry Crespin had, in fact, immediately reported the accident to her local State Farm agent.  It should be noted that Plaintiff Sherry Crespin is, herself, a former State Farm adjuster.

14. Defendant State Farm then delayed for some weeks while it investigated the financial status of the Farmers' insured responsible for the accident.  During this time, Defendant State Farm repeatedly requested that the Plaintiffs resubmit the same information and documentation which had been submitted with the original claim on March 22, 2010.

15. Specifically, on April 9, 2010, Defendant State Farm requested documents to "supplement" the original demand including "some medical bills, the surgical records, and more details on the loss of earnings."

16. Almost simultaneously with the request for additional documentation, a separate State Farm agent requested that the Plaintiffs provide "a Medical Payments Kit" so that that agent could issue a $ 5,000.00 medical payment available under the policy.

17. On May 11, 2010, Plaintiffs provided the agent handling the Plaintiffs' UIM claim with a complete set of updated medical records regarding Plaintiff Dennis Crespin's rotator cuff surgery, along with additional copies of all of the records previously provided.

18. On June 3, 2010, the agent handling the UIM claim, Mr. Ron DeGeer, requested

photographs of the vehicle driven by Plaintiff Dennis Crespin and requested "prior records" based upon a belief expressed by Mr. DeGeer on multiple occasions that there "must be" some other cause for Mr. Crespin's injuries.

19. Specifically, Mr. DeGeer speculated on multiple occasions that Mr. Crespin "must have" injured his shoulder at work and "must have", at some point in the past, received medical care for such injuries. Mr. DeGeer had no evidence whatsoever to support this speculation other than the fact that Mr. Crespin has worked for many years with the City of Albuquerque's road department. It should be noted that at no time did Mr. DeGeer, who was the adjuster handling the UIM claim, request a medical records release.

20. On July 1, 2010, Plaintiffs provided Mr. DeGeer with documentation from the City of Albuquerque Health Department proving that Mr. Crespin had not received any treatment for any injuries during his years of employment with the City of Albuquerque.

21. On July 14, 2010, Mr. DeGeer tendered the $5,000.00 medical payment despite the fact that the Plaintiffs had not demanded this payment and despite the fact the Plaintiffs had never provided the Medical Payments Kit which had been requested by the medical payment adjuster. Mr. DeGeer also offered to settle the Plaintiffs' UIM claim for an additional $5,000.00 based upon his speculation that there was a "question of causation" and that the medical records had "documented" the rotator cuff injury as a "degenerative" condition.

22. On July 16, 2010, Plaintiffs advised Mr. DeGeer that they were in the process of deciding how to respond to the offer but that they strongly disagreed with his evaluation of the claim and asked for some evidence to support his repeated speculations that there "must be" some other record of some other injury in the past to Mr. Crespin's shoulder. Plaintiffs also

requested documentation to back up Mr. DeGeer's opinion that Mr. Crespin's injury had been the result of some degenerative injury.  Finally, Plaintiffs advised the Defendant that they would not accept the $5,000.00 med pay unless they received written assurance from the Defendant that it would not pursue any kind of subrogation claim for this payment.

23.	Although Plaintiffs were not required to do so, they obtained a separate letter from the surgeon who repaired Mr. Crespin's rotator cuff stating "to a reasonable degree of medical probability" that the injuries to Mr. Crespin's shoulder were causally related to the motor vehicle accident.  Plaintiffs notified the Defendant that at this point the Defendant was in violation of its duties under New Mexico Law and the New Mexico Insurance Code and that bad faith litigation would be pending absent a fair, reasonable and timely settlement offer.

24.	On August 31, 2010, Mr. DeGeer offered to resolve the UIM claim for $15,000.00 which, when combined with the $25,000.00 obtained from the Farmers' insured, did not match the total amount of medical bills and lost wages incurred by Mr. Crespin.  Mr. DeGeer continued to feign ignorance regarding the true total of Mr. Crespin's lost wages and continued to assert, based on his interpretation of the medical records, that Mr. Crespin's injury was not caused by the automobile accident.  Mr. DeGeer continued to maintain that he thought it was "possible" that Mr. Crespin had suffered a condition prior to the accident.  It should be noted that at no time did Mr. DeGeer or anyone attempting to resolve the UIM claim request that Plaintiffs provide him with a medical records release.

25.	On September 1, 2010, Plaintiffs provided Mr. DeGeer with a DVD of the shoulder surgery in which the surgeon clearly states that there was no evidence of arthritis in Mr. Crespin's shoulder.  The letter advised that Mr. DeGeer's continued insistence that there was

some other possible cause of Mr. Crespin's injuries was rank speculation and bad faith as a matter of law.  The letter also advised that Mr. DeGeer's insistence that Mr. Crespin had only suffered $5000.00 in lost wages, or approximately one-third (1/3) of the actual total, was bad faith as a matter of law.   The letter advised that the Defendant's failure to respond to the July 16, 2010 request that the Defendant would agree not to seek any subrogation recovery for the $5000.00 med pay was bad faith as a matter of law.   Finally, the letter advised that the true value of Mr. Crespin's UIM claim was, at a minimum, $135,000.00 and that with the $25,000.00 offset and $5,000.00 med pay, the Defendant was under an obligation to pay an additional $105,000.00.  The letter demanded that the Defendant agree to resolve the UIM claim for its limits of $100,000.00 as set forth in the primary policy covering the Plaintiffs' automobiles and advised that the offer would remain open until September 14, 2010.

  26. In response to this demand, the Defendant embarked on a course of conduct designed to further delay and intimidate by retaining counsel.  On September 13, 2010, Defendant's counsel advised that they had been retained to "assist" in evaluating this claim and that to "better evaluate" the claim, it needed to obtain a statement under oath from Mr. Crespin.  It also asked, for the first time, that Mr. Crespin execute blanket medical releases, school record releases, and documentation from over twenty (20) healthcare providers, including women's health centers, who had never seen or treated Mr. Crespin.  The letter also falsely claimed that the Plaintiffs had previously failed to provide State Farm with a medical records release in connection with the resolution of their UIM claim.

  27. Plaintiffs responded the same day by advising that the Defendant was clearly acting in bad faith for all of the reasons set forth above and that no further delay would be

tolerated.

28.     Defendant's lawyers responded on September 16, 2010, making it clear that the Defendant had no intention of resolving the Plaintiffs' UIM claim unless their demands to initiate a new, formal, adverse and repetitive investigation were met.

## I.  BREACH OF CONTRACT

29.     Plaintiffs reallege and reassert all of the allegations set forth above.

30.     The Defendant, by its actions set forth above, has breached its obligations as set forth in its policies of insurance with the Plaintiffs and, specifically, its obligation to pay policy limits on at least one (1) of the Plaintiffs' UIM policies.  This breach of contract has resulted in Plaintiffs' damages and further relieves the Plaintiffs of any additional obligations under the policies.

## II.  INSURANCE BAD FAITH

31.     Plaintiffs reassert and reallege all of the allegations set forth above.

32.     The Defendant's conduct, as set forth above, violates the Defendants' obligation to timely investigate and fairly evaluate the Plaintiffs' UIM claim, and to make a diligent, intelligent, honest and good faith judgment as to Plaintiffs' UIM claim.  This constitutes bad faith as a matter of law and has caused Plaintiffs' damages.

## III.  VIOLATIONS OF THE NEW MEXICO INSURANCE PRACTICES ACT

33.     Plaintiffs reassert and reallege all of the allegations set forth above.

34.     Defendants' conduct, as described above, constitutes unfair claims practices defined and prohibited by §59A-16-20 NMSA 1978, including, but not limited to:

- failing to acknowledge and act reasonably promptly with respect to

     Plaintiffs' communications arising under their policies;

- failing to adopt and implement reasonable standards for prompt investigation processing of Plaintiffs' UIM claim;

- not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiffs' UIM claim after liability became reasonably clear;

- compelling Plaintiffs to instigate litigation to recover amounts due under their UIM policies by offering substantially less than those amounts which would be reasonably expected for similar claims;

- delaying investigation or payment of Plaintiffs' UIM claims by requiring Plaintiffs to submit preliminary claim information and then requiring subsequent submission of formal proof of loss forms which contain substantially the same information; and,

- failing to promptly provide reasonable explanations of the basis relied on to support the offer of compromise settlement.

35. As a result of these actions, Plaintiffs have suffered damages and are entitled to reasonable attorney's fees and costs as a result of the Defendant's willful violations of the Insurance Practices Act.

## IV.  VIOLATIONS OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

36. Plaintiffs reassert and reallege all of the allegations set forth above.

37. The Defendants' actions, as set forth above, violate the implied covenant of good faith and fair dealing which attaches to all contracts in the State of New Mexico, including the Plaintiffs' policies of insurance with the Defendant.  Plaintiffs' damages result from these

violations.

## V.  PUNITIVE DAMAGES

38.	Plaintiffs reassert and reallege all of the allegations set forth above.

39.	The Defendants' actions, and the actions of its agents, employees and representatives, as set forth above, were reckless, willful, wanton, malicious and committed with intentional disregard for the Plaintiffs' rights such that an award for punitive damages should be entered against the Defendant in an amount sufficient to punish it for the actions of its agents, employees and representatives, which the Defendant ratified, approved and condoned, and to deter others from engaging in similar conduct.

WHEREFORE Plaintiffs respectfully request that the Court award them damages sufficient to compensate them for the injuries and damages as set forth above, for an award of punitive damages, costs of suit, pre- and post-judgment interest, reasonable attorney's fees, and for such further relief as the Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF JAMES P. LYLE, P.C.
"Electronically Signed"

/s/    James P. Lyle  -   Attorney At Law
1116 Second Street, N.W.
Albuquerque, NM   87102
(505) 843-8000  -  Telephone
(505) 843-8043  -  Facsimile