IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DENNIS CRESPIN** and
**SHERRY CRESPIN,**
                    Plaintiffs,


v.                                                          No. Civ. 10-881 MCA/WDS


**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**
                    Defendant.

## MEMORANDUM OPINION AND ORDER


**THIS MATTER** is before the Court on *Defendant's Motion In Limine To Exclude Opinion Testimony Of Robert B. Dietz* [Doc 38]; Defendant's *Amended Motion To Bifurcate And Stay* [Doc 31]; and Defendant's *Motion For Summary Judgment Or In the Alternative To Stay Proceedings* [Doc 22]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the *Motions.*

## I.      BACKGROUND

Plaintiffs, Dennis and Sherry Crespin, have long maintained automobile insurance policies with Defendant, State Farm Mutual Automobile Insurance Company. The policy

includes $100,000 per person and $300,000 per incident of underinsured motorist coverage. On August 14, 2008, during the policy period, Mr. Crespin was involved in a car accident with an underinsured driver. Mrs. Crespin reported the accident to Defendant within days of its occurrence. In the months following the accident, Mr. Crespin was treated for a torn rotator cuff, which required surgery. His medical bills and lost wages, as a result of the shoulder surgery, totaled $45,000.

In March 2010, Plaintiffs settled their claims against the other driver for the limits of that driver's policy, $25,000. On March 22, 2010, Plaintiffs provided Defendant with facts regarding the settlement, the underlying claim, the accident report, medical records and bills, and documentation of Mr. Crespin's lost wages. Defendant initiated an investigation on March 29, 2010. Plaintiffs provided another set of medical records on May 11, 2010, and Defendant's agent, Ron DeGeer, then requested "prior records" of Mr. Crespin's previous orthopedic injuries. On July 1, 2010, Plaintiffs submitted documentation from the City of Albuquerque that he had not received medical treatment for any injuries during his years working for the City of Albuquerque.

On July 14, 2010, Defendant offered to settle Plaintiffs' claim for an additional $5,000, above the $5,000 already paid for medical bills and the $25,000 settlement. The settlement offer explained that the figure was based on questions regarding the cause of Mr. Crespin's injury. After this offer, Plaintiffs obtained a letter from Mr. Crespin's surgeon, which stated that the shoulder injury was caused by the car accident, to a reasonable degree of medical probability. Defendant responded on August 31, 2010 by

increasing its offer from an additional $5,000 to an additional $15,000.

Plaintiffs sent Defendant a policy-limits demand on September 1, 2010. Defendant then notified Plaintiffs that it would require that they submit statements under oath and that Mr. Crespin would need to execute blanket medical releases, as well as provide school record releases and documentation from a number of health care providers.

On September 22, 2010, Plaintiffs filed this diversity suit for breach of contract, bad faith, violations of the New Mexico Insurance Practices Act, violations of the implied covenant for good faith and fair dealing, and punitive damages.  [See Doc 1]

## II.   ANALYSIS

Three motions are currently pending before this Court:  *Defendant's Motion in Limine to Exclude Opinion Testimony of Robert B. Dietz* [Doc 38], Defendant's *Amended Motion To Bifurcate and Stay* [Doc 31], and Defendant's *Motion for Summary Judgment Or in the Alternative to Say Proceedings and Memorandum in Support* [Doc 22].  Each motion is addressed in turn.

## A.   Expert Testimony

Rule 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993).  The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless

presentation of cumulative evidence." Fed. R. Evid. 403. While the Court is not required

to consider any particular set of factors or utilize a particular procedure in making such

determinations with respect to expert testimony, the Court must make *some* kind of

determination on the record in order to demonstrate that it has performed its gatekeeping

function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v.

Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003).

Rule 702 was amended in 2000 to state as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The first requirement of this rule is that the expert's specialized

knowledge must "assist the trier of fact." Id. "Rule 702 thus dictates a common-sense

inquiry of whether a juror would be able to understand the evidence without specialized

knowledge concerning the subject." United States v. Muldrow, 19 F.3d 1332, 1338 (10th

Cir. 1994). Our Circuit has explained that a qualified expert may testify and provide

"brief, crisp answers to the . . . questions" about those "discrete topics"which are "beyond

the ken of the average juror." United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir.

1994).

The 2000 amendments to Rule 702 also explicitly state that to be admissible in

federal court, expert opinions require not only a reliable methodology but also a sufficient factual basis and a reliable application of the methodology to the facts.  See Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 429 (6th Cir. 2007); United States v. Mamah, 332 F.3d 475, 477-78 (7th Cir. 2003).  A "sufficient factual basis" under Fed. R. Evid. 702 does not necessarily require the facts or data upon which an expert bases his or her opinion to be independently admissible, so long as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703.

The rule permitting expert witnesses to consider inadmissible hearsay in *forming* their opinions does not mean that expert witnesses may simply *transmit* such inadmissible hearsay to the jury—without any further analysis—under the guise of an expert opinion. See Mejia, 545 F.3d at 197.  Rather, the Federal Rules of Evidence contemplate that, in order to yield an admissible opinion, expert witnesses must first apply a reliable methodology to the facts or data they have considered. Factors to be considered in assessing the reliability of an expert opinion include, but are not limited to: "(1) whether the opinion has been subjected to testing or is susceptible of such testing; (2) whether the opinion has been subjected to publication and peer review; (3) whether the methodology used has standards controlling its use and known rate of error; (4) whether the theory has been accepted in the scientific community."   Truck Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1210 (10th Cir. 2004) (citing Daubert, 509 U.S. at 590).  These factors, however, "may or may not be pertinent in assessing reliability, depending on the nature of

the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire

Co., 526 U.S. at 150 (internal quotation marks and citation omitted).

Defendant moves, *in limine*, to exclude Plaintiffs' expert, Robert B. Dietz, because

it characterizes his expert report is "equivocal and indefinite" and because he did not

review Plaintiffs' claim file before preparing his report. [Doc 38 at 3]  For these reasons,

Defendant contends that Mr. Dietz' opinions are insufficiently reliable to be admissible as

expert testimony. [Id. at 5]  In addition, Defendant expresses its concern that Mr. Dietz is

an attorney who intends to offer opinions that will simply instruct the jury on what result

to reach. [Id. at 9-10]  In the alternative, Defendant maintains that Mr. Dietz should not

be permitted to submit a supplement to his report, but should be limited to the opinions

and evaluations expressed in his February 2011 report. [Id. at 11-12]  Specifically,

Defendant insists that it would be "unfair to allow Mr. Dietz to express his opinions

regarding the claims handling and then to 'supplement' his report by attempting to find

information and documentation that support his speculative conclusions and conjecture."

[Id. at 13]

Plaintiffs respond that Mr. Dietz did not review the claim file because Defendant

has refused to produce the entire file and additionally that Mr. Dietz is not an attorney and

has no intention of improperly instructing the jury on legal issues.   Plaintiffs further

argue that Mr. Dietz should be permitted to testify as an expert because he is sufficiently

qualified, his methodology is reliable, and his  testimony will be helpful to the jury.

Defendant responds that the claim file was made available for inspection and that

Plaintiffs failed to retrieve and copy the file.

The Court begins the Rule 702 analysis by considering Mr. Dietz' qualifications. According to Mr. Dietz' curriculum vitae, he worked in the insurance industry between 1987 and 2001, for 25 years. He performed as a large loss adjuster, an attorney/litigation negotiator, a branch claims supervisor, and a liability/auto claims adjuster. He maintains a public adjuster license and an independent adjuster license, in the state of Washington. Between 2000 and 2010, Mr. Dietz has made numerous presentations on insurance-related topics for continuing legal education seminars. He avers that since 2001, he has been engaged as an expert in 20 states, including New Mexico. Defendant does not appear to dispute that Mr. Dietz is qualified to opine on insurance industry standards of care. The Court finds that Mr. Dietz is so qualified.

In his February 2011 report, Mr. Dietz states that he reviewed the accident report, the insurance policy, the photographs of Plaintiffs' vehicle, the correspondence between counsel in the present case, and the pleadings to date. [Doc 46-3 at 2] In his supplemental report, provided to the Court in May 2011, he adds that he has since reviewed the portions of the claim file that have been made available to him, as well as Mr. DeGeer's deposition testimony (taken after the filing deadline for expert reports). [Doc 46-2 at 1] Based on the review of these documents, together with his long experience in the insurance claims industry, Mr. Dietz intends to testify about general insurance principles, the role of an insurance company, claims-handling standards, and the nature of underinsured motorist coverage. Mr. Dietz further intends to offer the

following specific opinions:

> State Farm did not offer a reasonable explanation for its settlement offers.

> State Farm's settlement offers were based on its belief that Mr. Crespin's injury was degenerative, and not caused by the accident.

> State Farm has made compromise offers of underinsured motorist benefits, which Plaintiffs claim are too low, but State Farm has not made any payments on the settlement offers.

> A claim file must document how all damages that are legally recoverable have been evaluated by State Farm.

> State Farm may have engaged in an unreasonable debate with Plaintiffs due to speculation or hunches over issues that were factually established.

> The correspondence strongly suggests that State Farm denied causation without a reasonable basis.

> The claim file should show the basis for State Farm's calculation that Plaintiffs' claim is worth $45,000.

[Doc 46-3 at 8-11]  In his supplemental report, filed after additional discovery, Mr. Dietz

expanded on his original opinions:

> The portions of the claim file that have been produced do not support State Farm's valuation of Plaintiffs' claim.

> Mr. DeGeer's deposition testimony demonstrates that the evaluation of the claim was not objective.

[Doc 46-2 at 3]

Mr. Dietz' opinions are based on his experience and his review of the documents.

When an expert bases his opinion solely on his own experience, "the witness must

explain how that experience leads to the conclusion reached, why that experience is a

sufficient basis for the opinion, and how that experience is reliably applied to the facts."

United States v. Nacchio, 555 F.3d 1234, 1258 (10th Cir. 2009) (internal quotation marks

and citation omitted).  He has provided a thorough background review of the insurance

claims industry, and Defendant does not debate that the background information is

correct.  His 25 years of evaluating and handling insurance claims provide a sufficient

basis for the opinions that he has proffered.  In addition, in his reports, he outlined the

facts of the current dispute and explained how his opinions resulted.  Defendant does not

argue that Mr. Dietz' opinions are not relevant or would not be helpful to the jury.  The

Court concludes that Plaintiffs have established that Mr. Dietz has sufficient specialized

knowledge and that his opinions were developed according to a reliable methodology.

Defendant primarily contends that Mr. Dietz' opinions cannot be considered to be

reliable because he did not review the claim file and because he uses equivocal language

in his report.  Mr. Dietz uses tentative language in his report:  "If State Farm rejected the

proofs of the insured without a reasonable basis, it would be wrongful claims conduct"

and "If State Farm debated this issue without a reasonable basis, i.e., a hunch or

unfounded belief, it acted unreasonably."  [Doc 46-3 at 8]  This tentative language is not

due, however, to a speculative opinion—an opinion that has little basis in relevant

specialized knowledge or fact.  See Milne v. USA Cycling, Inc., 575 F.3d 1120, 1134

(10th Cir. 2009) (affirming the exclusion of an expert's opinions as "speculative" when

that expert had no experience with the particular circumstances of the case).  Instead, this

tentative language is due to a lack of documentation for Mr. Dietz to review.  Plaintiffs

contend that State Farm did not produce the claim file and that Mr. DeGeer had not yet

been deposed at the time that the expert report was required to be filed.  Dietz' tentative

language reasonably could have resulted from his refusal make assumptions about

information to which he did not yet have access.  See Federal Rule of Evidence 703 ("The

facts or data in the particular case upon which an expert bases an opinion or inference

may be those perceived by or made known to the expert at or before the hearing.").

Further, even if the claim file was available, whether Mr. Dietz reviewed it  in order to

reach his opinion does not go to the reliability of his methodology, but rather to the

weight the jury will give his opinion.  See Goebel, 346 F.3d at 1000 (explaining that any

weaknesses in an otherwise admissible opinion should be "diligently pursued and

exposed on cross examination").

        Dietz may not speculate on the witness stand.  Id. ("[I]t is axiomatic that an expert,

no matter how good his credentials, is not permitted to speculate." (internal quotation

marks and citation omitted)).  He may not testify as an expert in the form of an opinion or

otherwise unless "the testimony is based upon sufficient facts or data."  Fed. R. Evid. 702.

Nevertheless, his reports provide notice of the substance of his proposed direct testimony

and provide Defendant an opportunity to prepare cross examination or arrange for its own

expert testimony.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002)

(noting that expert reports are "necessary to allow the opposing party a reasonable

opportunity to prepare for effective cross examination and perhaps arrange for expert

testimony from other witnesses." (internal quotation marks and citation omitted)).  Dietz

is qualified, possesses specialized knowledge, and has developed his opinions by

applying his 25 years of experience in the industry to the known facts of the case.  Should

Plaintiffs be unable to establish a factual basis for Dietz' opinions at trial, that matter can

be reevaluated after an objection by Defendant.  See Goebel v. Denver  & Rio Grande W.

R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000) (explaining that the district court has

discretion in the manner in which it hears Daubert challenges and may take the issue up at

trial).

        Additionally, Defendant argues that Dietz is an attorney and intends to instruct the

jury on the applicable law or to tell the jury what verdict to reach.  At the outset, the

parties dispute whether Dietz actually is an attorney.  The question of Dietz' status,

however, need not be resolved in order to determine the scope of his testimony.  It is well

established that "[g]enerally, an expert may not state his or her opinion as to legal

standards nor may he or she state legal conclusions drawn by applying the law to the

facts."  Christiansen v. City of  Tulsa 332 F.3d 1270, 1283 (10th Cir. 2003) (internal

quotation marks and citation omitted).  Despite this, the Federal Rules provide that

"testimony in the form of an opinion or inference otherwise admissible is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Fed. R. Evid. 704(a).  In this vein, an expert may "refer to the law in expressing his or her

opinion."  A.E. ex rel Evans v. Indep. Sch. Dist. No. 25, 936 F.2d 472 (10th Cir. 1991).

        Our Circuit, in Specht v. Johnson, 853 F.2d 805 (10th Cir. 1988), provided a

hypothetical example to determine whether a question elicits a prohibited conclusion of law or an acceptable factual answer:  "[T]he question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?' would be allowed."  Id. at 807-08 (quoting Fed.R.Evid 704 advisory committee note).  In the present case, the particular question for the jury is whether Defendant acted in bad faith.  Thus, witness Dietz may not opine that Defendant denied the claim in bad faith.  He may, however, opine that Defendant's denial was frivolous or unfounded—the definition of bad faith accepted by the New Mexico Supreme Court.  See Sloan v. State Farm Mut. Auto. Ins. Co., 2004-NMSC-004, ¶ 18, 135 N.M. 106, 85 P.3d 230 (noting that "'bad faith' means 'any frivolous or unfounded refusal to pay.'" (quoting State Farm Gen. Ins. Co. v. Clifton, 86 N.M. 757, 758, 527 P.2d 798, 800 (1974)).

Thus, while the Court will not permit Dietz to instruct the jury, see Specht, 853 F.2d at 807 ("A witness cannot be allowed to give an opinion on a question of law. . . ." (internal quotation marks and citation omitted)), Dietz' testimony will not be excluded because his report is couched in legal terms.  See id. at 809 ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.").

Defendant's final argument with regard to Mr. Dietz is that his testimony should be restricted to those opinions proffered in his original report because the supplemental

report "attempt[s] to find information and documentation that support his speculative

conclusions and conjecture."  [Doc 38 at 13]  Defendant insists that it would be "unfair"

to permit Mr. Dietz to supplement  his report.  For support, Defendant points to Ray v.

Rutherford, Civ. No. 95-1578 SC/LFG (D.N.M. 1997) (J. Kelly, by designation).

Defendant does not provide a copy of this order and it is not available through the Court's

CM/ECF system.  Nevertheless, Defendant highlights the following language, for which

it provides a citation from Ray:

> Fed.R.Civ.P. 26(a)(2)(B) requires that an expert 'contain a complete
> statement of all opinions to be expressed and the basis and the reasons
> therefore' to facilitate discovery.  Although Fed.R.Civ.P. 26(e) requires a
> party to 'supplement or correct' disclosure upon information later acquired,
> that provision does not give license to sandbag one's opponent with claims
> and issues which should have been included in the expert witness's report
> (indeed, the lawsuit) from the outset.

[Doc 38 at 12]  This statement has little bearing on Dietz' supplementation because there

is simply no evidence that Plaintiffs attempted to sandbag Defendant with claims or

issues that were not previously disclosed.

Review of Dietz' supplemental report reveals that he first noted that he reviewed

additional materials, which were provided by Defendant after the expert report was

prepared.  Dietz further reports the impact of those materials on his original opinion.  He

does not alter his opinion, nor does he change the basis for his opinion.  In the present

case, there is no indication that Dietz attempted anything by supplementation other than

fully apprising Defendant of his position and the materials relevant to that position,

thereby preventing unfair surprise at trial.  Without any such indication that Plaintiffs

have added new claims or  issues, by Defendant's reasoning, a party could limit the

contours of expert testimony by deliberately withholding some information until after the

report is filed.

Defendant's motion to exclude or limit Dietz' testimony is denied.

**B.**     **Bifurcation**

Federal Rule of Civil Procedure 42 (b) permits this Court to order separate  trials

for separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite and

economize. . . ."  Whether to bifurcate claims for trial is within the "broad discretion" of

this Court.  F.D.I.C. v. Everett A. Holseth & Co., 36 F.3d 1004, 1008 (10th Cir. 1994).

Our Circuit has explained that "[r]egardless of efficiency and separability, . . . bifurcation

is an abuse of discretion if it is unfair or prejudicial to a party."  Angelo v. Armstrong

World Indus., Inc., 11 F.3d 957, 964 (10th Cir. 1993).

As noted earlier, Plaintiffs' *Complaint*  includes five claims:  breach of contract,

insurance bad faith, violations of the New Mexico Insurance Practices Act, breach of the

covenant for good faith and fair dealing, and punitive damages.  [See Doc 1]  Defendant's

motion requests that the breach of contract claim be tried separately from the remaining,

extra-contractual claims and that the extra-contractual claims be stayed until the

contractual claims are resolved.  Defendant argues that bifurcation is warranted in the

present case (1) because the outcome of Plaintiffs' breach of contract claim will

determine the viability of the bad faith claim; (2) because the contract claim is distinct

and completely separable from the extra-contractual claims; (3) because the evidence pertaining to the extra-contractual claims could prejudice Defendant; and (4) because the failure to bifurcate the claims could result in discovery disputes and conflicts of interest. Plaintiffs respond that breach of contract claims and bad faith claims are often pursued simultaneously and that in the present case, the same facts support all of the claims. Thus, according to Plaintiffs, bifurcation of the claims would "waste time, resources and money on two trials over the same essential issues. . . ."

The New Mexico Supreme Court has made clear that "the tort of insurance bad faith is fundamentally distinct from a claim for breach of contract. . . ." Sloan, 2004-NMSC-004, ¶ 13 (internal quotation marks and citation omitted).  Plaintiffs have claimed that Defendant acted in bad faith by refusing to adequately settle the valid claim, based on Defendant's failure to investigate and fairly evaluate the circumstances.  Specifically, Plaintiffs point to Defendant's repeated requests for additional medical records that Plaintiffs contend do not exist, as well as demands for sworn statements allegedly coming after offers of settlement and six months after the original claim was made. With respect to the medical records, Plaintiffs highlight Mr. DeGeer's deposition testimony that if such records do not exist and that if Mr. Crespin sustained no previous injury to his shoulder (as he claims), Plaintiffs' claim is worth "at least $90,000 to $100,000," a great deal more than the $5,000 and $15,000 settlement offers made by Defendant.  [Doc 32 at 5]  These activities, Plaintiffs argue, violate the insurance contract and constitute the tort of insurance bad faith.  See Martinez v. Cornejo, 2009-NMCA-011, ¶ 39 146 N.M. 223, 208

P.3d 443 (observing that "an insurer's bad faith refusal to settle a valid claim can be

viewed as a breach of the insurance contract."); <u>Sloan</u>, 2004-NMSC-004, ¶ 18 ("[A]n

insurer who fails to pay a first-party claim has acted in bad faith where its reasons for

denying or delaying payment of the claim are frivolous or unfounded.")

      Defendant's defense of the breach of contract claim is simply that Plaintiffs did not

timely submit medical records and did not provide a sworn interview—that Plaintiffs did

not comply with the insurance contract, which requires the full cooperation of a claimant.

Thus, Defendant's factual basis for its breach of contract defense is the same as Plaintiffs'

factual basis for the bad faith claim—the dispute about medical records and sworn

statements.  Although Plaintiffs' bad faith claim cannot stand unless the contract claim is

successful, <u>see</u> <u>Charter Servs, Inc. v. Principal Mut. Life Ins. Co.</u>, 117 N.M. 82, 99, 868

P.2d 1307, 1313 (Ct. App. 1994), both claims rely on the same factual underpinnings and

are therefore not separable.

      For the same reasons, even if evidence of bad faith will prejudice Defendant, that

evidence supports the contract claim as well as the bad faith claim.  All evidence

presented against another party to establish the element of a cause of action is

"prejudicial" to an extent.  None of the cases cited by Defendant, for the proposition that

potential prejudice to a defendant insurance company should result in bifurcation,

addressed breaches of insurance contracts that were predicated on the bad faith of the

defendant insurance company.  <u>See</u> <u>Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.</u>,

734 F.Supp. 204 (W.D.Pa. 1989); <u>Schmidt v. Calif. State Auto. Ass'n</u>, 127 F.R.D. 182

(D.Nev. 1989); Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002).

Defendant argues that discovery disputes may ensue because the claim file "may be protected and/or privileged" with regard to the breach of contract claim, but discoverable for purposes of the extra-contractual claims.  For support, Defendant cites In re Bergeson, 112 F.R.D. 692, 697 (D.Mont. 1986).  In Bergeson, the court held that "[f]or the claims file to be discoverable, the underlying claim must first be resolved, either by settlement or litigation."  Id.  This was to prevent the disclosure of privileged material, "which would jeopardize the insurance company's defense."  Id.  Defendant further cites Bartlett v. John Hancock Mut. Life Ins. Co., 538 A.2d 997 (R.I. 1988) (abrogated on other grounds by Skaling, 799 A.2d at 1004-05).  In Bartlett, the Supreme Court of Rhode Island conducted a qualified privilege analysis to determine whether the local rules would permit the blanket disclosure of the claim file.  The Rhode Island Court concluded that total disclosure would "irreparably prejudice the insurer's ability to defend itself on the contract."  538 A.2d at 999-1000.  In Schmidt, the District Court for the District of Nevada noted the Bartlett decision, stating "the Rhode Island Supreme Court merely held that the denial of the work-product privilege as to a bad faith claim because of necessity is not applicable while there is a breach of contract claim outstanding."  127 F.R.D. at 185. The Schmidt court further reasoned that "if the purported work-product material is not privileged in the first instance because it was not prepared in anticipation of litigation, as discussed previously, then the material is discoverable even as to a breach of contract claim."  Id.

The question of privilege and the discovery of documents is a thinly disguised reiteration of the prejudice argument.  Defendant has provided no authority to suggest that New Mexico courts apply a qualified privilege to insurance claim files.  <u>See</u> Federal Rule of Evidence  501; <u>Sims v. Great Am. Life Ins. Co.</u>, 469 F.3d 870, 881 (10th Cir. 2006) (listing  Rule 501 as one of the "numerous circumstances" in which the Rules of Evidence "expressly provide for the application of state law").  Indeed, Defendant has not provided any legal basis for withholding the claim file, apart from a single non-binding and factually distinct case and a single non-binding case based on an inapplicable local rule, which applies a privilege that has not been recognized by New Mexico in this context.  The documents, if relevant, are presumed admissible unless Defendants can establish that they are subject to privilege.   <u>See</u> Rule 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.").

This matter—of privilege—is not currently before the Court.  If and when the issue arises, however, an appropriate privilege analysis will be applied, pursuant to New Mexico law, in order to determine whether the claim file—which is at least arguably relevant to both the bad faith claim and the bad faith breach of contract claim—is discoverable or admissible.  Given the essentially identical basis for the contractual and extra-contractual claims, however, it does not seem likely that the claim file would reasonably be discoverable for one claim, but not the other.  Thus, the anticipated

discovery difficulties do not require bifurcation.

Defendant's final argument is that bifurcation is necessary because Mr. Lyle, Plaintiffs' attorney, may be required to be a witness for the bad faith claims.  Specifically, Defendant maintains that Attorney Lyle's letter correspondence with Defendant and Defendant's counsel will be evidence of Defendant's reasonable investigation of Plaintiffs' claim.  Plaintiffs counter that Mr. Lyle will not be a "necessary witness," as required by New Mexico rules for the disqualification of an attorney against a client's wishes.  Plaintiffs argue that he will not be a necessary witness because the communications to which Defendant refers are in writing, to be presented to the fact finder and evaluated accordingly.

The United States District Court for the District of New Mexico applies the Rules of Professional Conducted adopted by the Supreme Court of the State of New Mexico, unless otherwise provided by local rule or Court order.  <u>See</u> Local Rule 83.9.  According to NMRA16-307(A), the New Mexico rule of professional conduct addressing lawyers as witnesses,

> [a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless . . . (1) the testimony relate to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

The New Mexico Supreme Court, applying this Rule, has noted that "the burden of establishing that counsel should be disqualified lies with the party seeking

disqualification." <u>Mitchell-Carr v. McLendon</u>, 1999-NMSC-025, ¶ 39, 127 N.M. 282,

980 P.2d 65.  "In transactional matters the attorney frequently is a witness to events that

result in litigation, but that fact says little about the necessity of the attorney's testimony

as a witness at trial." <u>Chappell v. Cosgrove</u>, 1996-NMSC-020, ¶ 13, 121 N.M. 636, 916

P.2d 836.  In <u>Chappell</u>, the New Mexico Supreme Court held that

> an attorney may not be disqualified under Rule 16-307 absent a showing by
> the party seeking disqualification that the attorney's testimony is material to
> an issue in the case, that the evidence to be elicited from the attorney's
> testimony is not available from another source, and that the attorney's
> testimony is potentially prejudicial to his client's case.

<u>Id.</u> Further, "[o]rdinarily threshold discovery will be necessary to establish these

elements." <u>Id.</u>

Defendant has made no showing that Plaintiffs' attorney will be required to be

disqualified as a witness under Rule 16-301.  Defendant simply states that "the claims

should be bifurcated because Plaintiffs' counsel . . . may be a witness in the bad faith

claim because there is a conflict in the recollection of events between himself and claims

representative Ron DeGeer."  [Doc 31 at 6]  This conflict, Defendant goes on to explain,

is demonstrated in the written correspondence between Mr. Lyle and Defendant.  Under

<u>Chappell</u>, this is an insufficient showing of the need for disqualification, as it addresses

none of the factors listed.  Accordingly, it is premature to bifurcate the claims simply

because Defendant believes Plaintiffs' attorney might be disqualified.

For these reasons, the interests of convenience, economy, and efficiency are better

served by the breach of contract and the extra-contractual claims remaining joined. If this Court were to bifurcate, should Plaintiffs succeed on their contract claims, an identical discovery process for the extra-contractual claims would begin, and the parties and the Court would be required to reinvent the wheel with new motions deadlines and a second trial.

Defendant's motion to bifurcate the contractual and extra-contractual claims is denied.  As a result, a stay of the extra-contractual claims is not warranted.

## C.     Summary Judgment

The final motion before the Court is Defendant's *Motion For Summary Judgment Or In The Alternative To Stay Proceedings* [Doc 22].  Summary judgment under Fed.R.Civ.P. 56© "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56©.  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.   Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.  It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

Defendant argues that summary judgment is warranted because it is undisputed that Plaintiffs failed to comply with the terms of the insurance contract prior to bringing suit.  [Doc 22 at 4]  The insurance contract requires that "[u]nder . . . Uninsured and Unknown Motorists Coverage . . . each insured . . . must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require."  [Doc 22-1 at 2]  In addition, the insurance contract states that "[a] person making a claim under . . . Uninsured and Unknown Motorists Coverage . . . *must* . . . provide written authorization for *us* to obtain:  (a) medical bills; (b) medical records ©️ wage, salary, and employment information; and (d) any other information we deem necessary to substantiate the claim."  [Doc 22 at 2[1]]  Further, the contract warns that

---

[1]  Defendant did not include as an exhibit the page of the insurance contract with this provision.  Nevertheless, Plaintiffs concede that "Defendants have quoted, apparently accurately, certain portions of the standard automobile insurance policy issued to Plaintiffs which relates to

"[l]egal action may not be brought against *us* until there has been full compliance with all the provisions of this policy."  [Doc 22-1 at 3]  Defendant contends that Plaintiffs failed to provide the necessary medical releases and failed to submit to an examination under oath.  As a result, Defendants maintain that Plaintiffs are precluded from maintaining suit on the contract.  Specifically, Defendant argues that without the sworn statements or the additional medical records, it could not "properly investigate the claim."

Plaintiffs, however, deny that they failed to comply with the terms of the contract. As stated earlier, Plaintiffs contend that no additional medical records exist and that they were never asked to provide a statement under oath until after Defendant made two settlement offers, six months after the initial claim was filed.  Indeed, Plaintiffs have provided evidence that Mr. DeGeer evaluated Plaintiffs' claim on the assumption that Mr. Crespin had previously seen doctors for his shoulder but failed to disclose the records from those examinations.  During his deposition, Mr. DeGeer was asked, "Did you believe, at the time you made your first offer, that Mr. Crespin had seen a medical provider in the area of orthopedic services that had not been disclosed to you?"  [Doc 27-1 at 4-5]  Mr. DeGeer responded, "My belief was that is likely yes, that he had seen—I don't know if it had been an orthopedist; it could have been a general practitioner.  I mean, who doesn't go to a general practitioner doctor at the age of 53?"  [Id. at 5]  Later, Mr. DeGeer reiterated that is common sense that "someone has to see doctors prior to age

the subject accident."  [Doc 27 at 2]  Accordingly, I rely on the language to which the parties stipulated.

53 other than the City of Albuquerque, I would think." [Id. at 7] He acknowledged that

he was not a doctor and he did not consult with a doctor to evaluate the medical records in

his possession.  Instead, because Mr. Crespin's left shoulder was not treated until four

months after the accident, Mr. DeGeer determined that there was a "[g]ood possibility"

that Mr. Crespin had previously received orthopedic care.  [Id. at 5-6]  Based on this

proffered evidence by Plaintiffs, there exits a material dispute of fact as to whether

Plaintiffs breached the contract by refusing to provide additional medical records or

instead, that other records do not exist.

Additionally, Plaintiffs provided evidence, through Mr. DeGeer's testimony, to

establish that prior to both settlement offers, Defendant did not request a sworn statement.

[Id. at 9-10]  Plaintiffs contend that by the time Defendant requested a sworn statement, it

had already made two settlement offers.  Plaintiffs therefore maintain that any failure on

their part to give a statement was not a material breach of  the contract and did not

prejudice Defendant.  [Doc 27 at 11]  Thus, the question is whether Plaintiffs' failure to

provide sworn statements was a material breach of the contract, in light of Defendant's

previous offers of settlement—made without apparent need for sworn statements—and

whether such material breach substantially prejudiced Defendant.  See Foundation

Reserve Ins. Co. v. Esquibel, 94 N.M. 132, 134, 607 P.2d 1150, 1152 (1980) ("[T]he

insuror must demonstrate substantial prejudice as a result of a material breach of the

insurance policy by the insured before it will be relieved of its obligations under a

policy."); see also State Farm Mut. Auto. Ins. Co. v. Fennema, 2005-NMSC-010, ¶ 7, 137

N.M. 275, 110 P.3d 491 (Fennema) (reiterating the "substantial prejudice rule" and explaining that the rule protects "the insured's reasonable expectation that coverage will not be denied arbitrarily").

It is well established that "the materiality of a breach is a specific question of fact," Famiglietta v. Ivie-Miller Enters., Inc., 1998-NMCA-155, ¶ 16, 126 N.M. 69, 966 P.2d 777, and that "[t]he ultimate issue of substantial prejudice is, in most cases, a question for a jury." Fennema, 2005-NMSC-010, ¶ 7. Accordingly the resolution of this dispute—whether Plaintiffs' failure to provide sworn statements was a material breach and caused Defendant substantial prejudice—is also a material and disputed question of fact that is inappropriate for resolution on summary judgment.

Defendant's motion for summary judgment is denied.

## III.  CONCLUSION

Pretrial evaluation of Mr. Dietz' proposed testimony indicates that he qualifies as an expert, and his opinions are relevant and reliable. Defendant has failed to establish that bifurcation of the contractual and extra-contractual claims is warranted, and disputed issues of material fact remain to be decided by the trier of fact, rendering summary judgment at this stage inappropriate.

**IT IS THEREFORE ORDERED** that *Defendant's Motion In Limine To Exclude Opinion Testimony Of Robert B. Dietz* [Doc 38] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's *Amended Motion To Bifurcate And Stay* [Doc 31] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's *Motion For Summary Judgment Or In The Alternative To Stay Proceedings* [Doc 22] is **DENIED**.

**SO ORDERED** this 12th day of July, 2011, in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge